Russ E. VERRIER, Plaintiff–Appellant,

v.

COLORADO DEPARTMENT OF CORRECTIONS; John W. Suthers, Executive Director; Mary West, Deputy Director; Jerry Gasko, Deputy Director; and Edd C. Gillespie, Grievance Officer, Defendants–Appellees.

Nos. 01CA1803, 01CA2306.

Colorado Court of Appeals, Div. IV.

July 31, 2003.

Russ E. Verrier, Pro Se.

Ken Salazar, Attorney General, Juliana M. Zolynas, Assistant Attorney General, Denver, Colorado, for Defendants–Appellees.

Opinion by Judge NIETO.

Plaintiff, Russ E. Verrier, appeals the dismissal of his complaint against defendants, Colorado Department of Corrections; John W. Suthers, Executive Director; Mary West, Deputy Director; Jerry Gasko, Deputy Director; and Edd C. Gillespie, Grievance Officer. We affirm.

Plaintiff, an inmate in the Huerfano County Correctional Center, submitted a series of grievances seeking review of the denial of earned time credit for his participation in two inmate vocational programs. Plaintiff argued that he was entitled to earned time credit pursuant to §§ 17–22.5–302(1.5)(a) and 17–22.5–405, C.R.S.2002. Defendants denied plaintiff's grievances, concluding that he was not eligible for earned time credit under Department of Corrections (DOC) policy because of his educational classification level and that he was not entitled to such credit under §§ 17–22.5–302(1.5)(a) and 17–22.5–405.

Plaintiff filed a complaint in the trial court seeking alternative relief pursuant to C.R.C.P. 106(a)(2) and (4). Under C.R.C.P. 106(a)(2), he sought an order compelling defendants to grant him earned time credit. Pursuant to C.R.C.P. 106(a)(4), he sought judicial review of the DOC's policy relating to earned time credit.

Defendants moved under C.R.C.P. 12(b)(5) to dismiss his complaint, and plaintiff failed to timely respond. The trial court dismissed plaintiff's complaint based on his failure to respond and based on "the authorities cited in the motion." Plaintiff appeals that ruling, as well as the trial court's subsequent denial of his motion for leave to file a response.

We reject plaintiff's contention that the trial court erred in dismissing his complaint.

A motion to dismiss pursuant to C.R.C.P. 12(b)(5) for failure to state a claim upon which relief can be granted serves as a test of the formal sufficiency of a plaintiff's complaint. Motions to dismiss are looked upon with disfavor and should not be granted unless it appears beyond a doubt that a plaintiff can prove no set of facts that would entitle the plaintiff to relief. *Public Service Co. v. Van Wyk*, 27 P.3d 377 (Colo.2001).

"When reviewing a motion to dismiss under C.R.C.P. 12(b)(5), all averments of material fact must be accepted as true, and all of the allegations in the complaint must be viewed in the light most favorable to the plaintiff." Also, the court may consider only matters stated within the complaint itself. An appellate court is in the same position as the trial court to rule on a motion to dismiss. Thus, the appellate court must determine whether the plaintiff has pleaded facts that, if true, are sufficient to support each claim asserted in the complaint. *Public Service Co. v. Van Wyk, supra*, 27 P.3d at 386.

I.

Plaintiff first contends he sufficiently alleged that defendants failed to grant him earned time credit to which he is entitled under §§ 17–22.5–302(1.5)(a) and 17–22.5–405, and therefore, he is entitled to mandamus relief pursuant to C.R.C.P. 106(a)(2). We are not persuaded.

C.R.C.P. 106(a)(2) provides that relief may be obtained "[w]here the relief sought is to compel a lower judicial body, governmental body, corporation, board, officer or person to perform an act which the law specially enjoins as a duty resulting from an office, trust, or station." Mandamus is appropriate only when the following three-part test is satisfied: (1) the plaintiff has a clear right to the relief sought; (2) the agency has a clear duty to perform the act requested; and (3) no other adequate remedy is available to the plaintiff. *Sherman v. City of Colorado Springs Planning Comm'n*, 763 P.2d 292, 295 (Colo.1988); *Lazuk v. School Dist. No. 1*, 22 P.3d 548 (Colo.App.2000).

"Mandamus lies to compel the performance of a purely ministerial duty involving no discretionary right and not requiring the exercise of judgment. It does not lie

where performance of a trust is sought which is discretionary or involves the exercise of judgment." *Bd. of County Comm'rs v. County Road Users Ass'n,* 11 P.3d 432, 437 (Colo.2000).

Plaintiff contends that defendants have failed to perform their duty to award him earned time credit as required by § 17–22.5–302(1.5)(a). However, this section provides that earned time credits are to be awarded pursuant to § 17–22.5–405. Section 17–22.5–405(3), C.R.S.2002, provides that the department "may grant, withhold, withdraw, or restore, consistent with the provisions of this section, an earned time deduction from the sentence imposed." Further, § 17–22.5–302(4), C.R.S.2002, states that the DOC "may grant, withhold, withdraw, or restore" earned time deductions and such a deduction "shall not vest upon being granted and may be withdrawn once it is granted."

Plaintiff argues that the phrase "shall receive earned time pursuant to section 17–22.5–405" in § 17–22.5–302(1.5)(a) creates a mandatory duty of the DOC to grant him earned time if he makes positive progress in a correctional education program. We disagree.

■■■ When construing a statute, we must ascertain and give effect to the intent of the General Assembly. The statute must be read and considered as a whole and interpreted to give sensible and harmonious effect to all its parts. Further, we must avoid an interpretation that leads to an absurd result. *State v. Nieto,* 993 P.2d 493 (Colo.2000). Words and phrases should be read in context and construed according to their common usage. Section 2–4–101, C.R.S.2002.

■■■ The word "shall" used in a statute generally has a mandatory connotation. *People v. Guenther,* 740 P.2d 971 (Colo.1987). When § 17–22.5–302(1.5)(a) is read in conjunction with the broad discretionary language in §§ 17–22.5–302(4) and 17–22.5–405(3), it is clear that the legislative intent was to give the DOC broad authority to "grant, withhold, withdraw, and restore" earned time deductions. This interpretation is consistent with other appellate opinions that have considered the DOC's authority

over earned time deductions. *Renneke v. Kautzky,* 782 P.2d 343 (Colo.1989)(General Assembly granted DOC discretion to withhold, withdraw, or restore earned time credits); *People v. Frank,* 30 P.3d 664, 666 (Colo.App.2000)("granting of earned-time by the DOC is discretionary").

"Shall," in addition to its mandatory meaning, also can mean "should," "may," or "will." *Black's Law Dictionary* 1379 (7th ed.1999). To read "shall" in § 17–22.5–302(1.5)(a) in a mandatory sense would lead to an absurd result. The statute would then require a mandatory grant of credit based upon an exercise of discretion. We are directed to avoid such a result. *See State v. Nieto, supra.*

■■■ Thus, we conclude that granting of earned time credit under § 17–22.5–302(1.5)(a) lies in the discretion of the DOC, and plaintiff has no clear right to receive, and defendants have no clear duty to grant, earned time credit. Accordingly, plaintiff is not entitled to mandamus relief.

Plaintiff argues that defendants are obligated to review his performance records and determine whether he is entitled to earned time credit. However, plaintiff did not make such a claim in his complaint. Therefore, the issue was not properly raised, and we will not consider it here. *See People v. Frank, supra* (issue not raised in the district court not considered on appeal); *see also County of Adams v. Hibbard,* 918 P.2d 212 (Colo.1996)(appellate courts may consider only issues actually determined by another court or agency and properly presented for review).

## II.

Plaintiff also contends that defendants' refusal to grant him earned time credit was a quasi-judicial determination, and therefore, he is entitled to relief pursuant to C.R.C.P. 106(a)(4). We disagree.

C.R.C.P. 106(a)(4) provides that relief may be obtained "[w]here any governmental body or officer or any lower judicial body exercising judicial or quasi-judicial functions has exceeded its jurisdiction or abused its discre-

tion, and there is no plain, speedy and adequate remedy otherwise provided by law."

■ Quasi-judicial actions generally involve a determination of the rights, duties, or obligations of specific individuals based on the application of existing legal standards to facts developed at a hearing. Legislative action, on the other hand, usually relates to a public policy matter of a permanent or general character, prospective in nature, and usually not restricted to an identifiable person or group. *Cherry Hills Resort Development Co. v. City of Cherry Hills Village*, 757 P.2d 622 (Colo.1988). Actions necessary to carry out existing legislative policies are deemed to be administrative. *City of Aurora v. Zwerdlinger*, 194 Colo. 192, 571 P.2d 1074 (1977). Legislative and administrative actions are not reviewable pursuant to C.R.C.P. 106(a)(4). *Prairie Dog Advocates v. City of Lakewood*, 20 P.3d 1203 (Colo.App.2000).

■ We review de novo a trial court's determination whether a plaintiff was seeking review of a quasi-judicial function of a governmental body. *Jones v. Colo. Dep't of Corrections*, 53 P.3d 1187 (Colo.App.2002).

Here, plaintiff filed a grievance challenging the denial of earned time credit, and at each step in the grievance process, it was denied because plaintiff was not eligible for such credit pursuant to DOC policy. In the third step of the grievance process, plaintiff clarified the nature of his complaint.

> I wish to clarify my position.... It is the underlying CDOC policy which renders me ineligible for the educational earned time.... It is [due to] the fact that the CDOC policy does not conform to the mandated statutory requirement that I am not eligible for the educational earned time.

Plaintiff's C.R.C.P. 106(a)(4) complaint is ambiguous as to what DOC action he sought to have reviewed. He alleged that the DOC policy is arbitrary and capricious, violates equal protection guarantees, and renders those most in need of vocational programs ineligible. He also alleged that defendants abused their discretion by unreasonably applying statutes and implementing policies that deny him educational earned time. When the allegations in his C.R.C.P.

106(a)(4) complaint are read in the light of the grievance he is appealing, it is clear that he is seeking review of the DOC's educational earned time policy, rather than review of the application of that policy to his situation.

■ The DOC's action establishing policies concerning earned time deductions was not quasi-judicial in nature. In establishing its policies, the DOC did not determine the rights, duties, or obligations of plaintiff, nor did it apply existing legal standards to plaintiff's situation as it was demonstrated by facts developed at a hearing. Therefore, the creation of this policy was not a quasi-judicial action because the policy applies to all inmates and was not directed specifically at plaintiff. *See Jones v. Colo. Dep't of Corrections, supra* (DOC's regulation to withhold deposits from inmates' accounts was applied to and enforced against all prisoners owing restitution, was not specifically directed against the plaintiff, and therefore, was not a quasi-judicial action). Therefore, plaintiff failed to state a claim under C.R.C.P. 106(a)(4).

Even if plaintiff's complaint could be read to seek review of defendants' application of DOC policy to his situation, it still would fail because he did not seek this relief in his grievance. As noted above, plaintiff's grievance, which was incorporated into his C.R.C.P. 106(a)(4) complaint, asserted that the DOC educational earned time policy did not comply with the statutory requirements. The grievance did not assert that defendants abused their discretion in the application of the policy to plaintiff.

C.R.C.P. 106(a)(4) proceedings are limited to review of whether the decision of the governmental body was an abuse of discretion or was made without jurisdiction, based on the evidence in the record before that body. C.R.C.P. 106(a)(4)(I); *Liquor & Beer Licensing Advisory Bd. v. Cinco, Inc.*, 771 P.2d 482 (Colo.1989). Thus, because they were not asked to apply the DOC policy to plaintiff's situation, defendants made no such decision, and there can be nothing in the record for the trial court to review. *See Hessling v. City of Broomfield*, 193 Colo. 124, 563 P.2d 12 (1977)(when conducting review

under C.R.C.P. 106, district court may not uphold a city council's decision on a basis not considered by the city council); *Spencer v. Bd. of County Comm'rs*, 39 P.3d 1272 (Colo.App.2001)(district court review under C.R.C.P. 106(a)(4) limited to review of the record, and therefore, court cannot grant relief under C.R.C.P. 60 based on matters not considered by the board).

Further, C.R.C.P. 106(a)(4) does not provide for judicial review of the sufficiency and validity of an agency's legislative acts, including challenges for constitutional sufficiency. *Liquor & Beer Licensing Advisory Bd. v. Cinco, Inc., supra.* Therefore, plaintiff's claim that the DOC policy violates equal protection guarantees cannot be reviewed pursuant to C.R.C.P. 106(a)(4).

Accordingly, the trial court did not err in dismissing plaintiff's claim brought under C.R.C.P. 106(a)(4). *See Stuart v. Bd. of County Comm'rs*, 699 P.2d 978, 980 (Colo.App.1985)(trial court had no jurisdiction under C.R.C.P. 106(a)(4) to review decision that was neither judicial nor quasi-judicial).

Because of our determination of the issues addressed above, we do not consider whether the trial court properly dismissed plaintiff's complaint based on his failure to respond to defendants' motion.

The judgment is affirmed.

Judge CASEBOLT concurs.

Judge TAUBMAN concurs in part and dissents in part.

Judge TAUBMAN concurring in part and dissenting in part.

I concur with part I of the majority opinion. However, because I agree with plaintiff, Russ E. Verrier, that defendants' refusal to grant him earned time was a quasi-judicial determination, I disagree with part II of the majority opinion and respectfully dissent.

After Verrier received the initial denial of his request for earned time credit, he filed a grievance with DOC and completed the three-step grievance process. His grievances alleged he satisfied the requirements for educational earned time provided by stat-ute because he had taken horticultural and painting classes and made "positive progress" as required. He also alleged that the underlying DOC policy, which rendered him ineligible, did not conform with the statutory requirements. Similarly, Verrier's complaint in the district court alleged that DOC's regulation concerning earned time was improperly applied to him.

One test for determining quasi-judicial actions focuses on three factors. *See, e.g., Jones v. Colo. Dep't of Corr.*, 53 P.3d 1187, 1191 (Colo.App.2002); *Baldauf v. Roberts*, 37 P.3d 483, 484 (Colo.App.2001). However, as the majority acknowledges, another test for determining a quasi-judicial action focuses on the governmental decision and whether it was based on the application of criteria to a specific circumstance. Under this test, in the absence of statutory notice and hearing requirements, an action may nevertheless be quasi-judicial if "the governmental decision is likely to adversely affect the protected interests of specific individuals, and if a decision is to be reached through the application of preexisting legal standards or policy considerations to present or past facts." *Prairie Dog Advocates v. City of Lakewood*, 20 P.3d 1203, 1207 (Colo.App.2000)(quoting *Cherry Hills Resort Dev. Co. v. City of Cherry Hills Village*, 757 P.2d 622, 627 (Colo.1988)).

An inmate has no fundamental or constitutional right to time off for good behavior, and any entitlement to such a sentence reduction exists only as created by statute. *People v. Alderman*, 720 P.2d 1000, 1001 (Colo.App. 1986).

The earned time statutes, §§ 17–22.5–302 and 17–22.5–405, C.R.S.2002, do not provide for notice or a hearing before action is taken. Section 17–22.5–302(1.5)(a) specifically mandates that if an inmate makes positive progress in a correctional education program, he or she "shall receive earned time pursuant to section 17–22.5–405." Section 17–22.5–405(1), in turn, provides that earned time "may be deducted from the inmate's sentence upon a demonstration to the department by the inmate, which is certified by the inmate's case manager or parole officer, that he has made consistent progress in the following catego-

ries as required by the department of corrections," and correctional education programs are a enumerated category.

Under DOC policy, only vocational student inmates classified as level 5 are eligible for education earned time, and "[n]o other vocational students are eligible[ ]" based upon their academic and vocational initial needs assessment level, which is administered to all DOC inmates. *See* Correctional Education Program Memorandum from Eric Brookeres, Director of Academic Education, and Tony Romero, Director of Vocational Education, to Program Managers, Academic and Vocational Teachers, Colorado Department of Corrections (Sept. 27, 2000)(CEP Memo.). Level 5 is defined as *"SPECIAL NEEDS—Has* some form of disability which prevents full-time employment. May be eligible to receive disability payments." CEP Memo. 2. Verrier's vocational classification was level 1. Level 1 is defined as *"ESTABLISHED VOCATIONAL CAREER* Has a vocational career established for at least four years, to which he/she plans to return upon release from the D.O.C. Has a journeyman's or master's license in a trade to which he/she can return. Is retired. Has no need of vocational programs." CEP Memo. 2.

DOC Admin. Reg. No. 850–04 provides a grievance process for inmate complaints, and all inmates are given written notification of the procedure upon entering the DOC. An inmate must first attempt to resolve his or her complaint informally. After that, the grievance procedure involves a three-step process. Inmates are given a grievance form for description of the complaint, which states, "If you are dissatisfied with the response to this Step 1 or Step 2 grievance, you may obtain further review by submitting the next step to your [c]ase manager or the [g]rievance [o]fficer[ ]." Finally, the regulation provides a time limit for DOC to respond to all inmate grievances.

In *Baldauf,* a division of this court held that DOC's administrative segregation action constituted quasi-judicial action subject to review under C.R.C.P. 106(a)(4). There, DOC's regulations required notice and a hearing before an inmate could be placed in administrative segregation and required a determination made at a hearing. *Baldauf v. Roberts, supra.*

However, in *Jones,* a division of this court held that DOC's regulation requiring withholding of twenty percent of the deposits in inmate accounts to satisfy outstanding restitution obligations was not a judicial or quasi-judicial action. The *Jones* division based its conclusion on the fact that this regulation applied generally to all prisoners owing restitution. Thus, DOC's enforcement of the regulation was not specifically targeted at the inmate. *Jones v. Colo. Dep't of Corr., supra.*

Here, unlike *Jones,* Verrier's DOC grievance and the complaint filed in district court challenged DOC's earned time policy as it applied to him. Thus, *Jones* is distinguishable from the present case.

In my view, DOC's determination was a quasi-judicial action. By statute, earned time *may* be deducted from an inmate's sentence where he or she makes consistent progress in a correctional education program. *See* § 17–22.5–405(1)(g), C.R.S.2002. To the extent that the earned time statutes provide criteria for a sentence reduction, Verrier has a protected interest in earned time, even though he does not have entitlement to earned time. *See People v. Alderman, supra.* Additionally, DOC applied its policy concerning education earned time credit to Verrier's particular circumstances and concluded that he was not eligible for earned time.

Therefore, DOC's decision constituted quasi-judicial action because it was likely to adversely affect Verrier's protected interest, and the decision was based upon application of DOC's policy to Verrier. *See Prairie Dog Advocates v. City of Lakewood, supra.*

Consequently, I would conclude that the trial court erred in not addressing Verrier's claim on the merits. *See Morgan v. Colo. Dep't of Health Care Policy & Fin.,* 56 P.3d 1136, 1141 (Colo.App.2002)(under delegation doctrine, sufficient statutory and administrative standards must be provided to ensure agency action is rational and consistent and must provide for meaningful appellate review).

Accordingly, I would remand the matter to the trial court for a determination on the merits.