2015 COA 91

**HIGH PLAINS LIBRARY DISTRICT; Karen Rademacher, Trustee; Lucille Arnusch, Trustee; Jacqueline Maslowe, Trustee; Brian Larson, Trustee; and Stan Sameshima, Trustee, Plaintiffs–Appellees,**

v.

**Barbara KIRKMEYER, Mike Freeman, Douglas Rademacher, William Garcia, and Sean Conway, in their official capacities as members of the Board of County Commissioners of Weld County, Defendants–Appellants.**

Court of Appeals No. 14CA0997

Colorado Court of Appeals,
Div. V.

Announced July 2, 2015

Rehearing Denied August 13, 2015

Otis, Bedingfield & Peters, LLC, Jennifer Lynn Peters, Timothy R. Odil, Greeley, Colorado; Godsey Law Office LLC, Nathan A. Godsey, Eaton, Colorado, for Plaintiffs–Appellees.

Bruce Barker, County Attorney, Bob Choate, Assistant County Attorney, Greeley, Colorado, for Defendants–Appellants.

Seter & Vander Wall, P.C., Kim J. Seter, Elizabeth A. Dauer, Greenwood Village, Colorado, for Amicus Curiae Colorado Association of Libraries.

¶ 1 Appellants [1] are members of the Weld County Board of County Commissioners (commissioners). They and the other defen-

<hr>

1. Appellants include Barbara Kirkmeyer, Mike Freeman, Douglas Rademacher, William Garcia, and Sean Conway, who were sued in their official capacities as members of the Weld County Board of County Commissioners.

dants[2] in the district court adopted resolutions to remove the board of trustees (board) of the High Plains Library District (district). Plaintiffs, the trustees[3] and the district, filed a complaint and sought a preliminary injunction. The commissioners appeal the district court's order granting a preliminary injunction enjoining them from removing the trustees. We affirm.

¶ 2 The question before us is whether the district court abused its discretion by granting the preliminary injunction. To answer that question, we must first determine whether the court

(1) erred in concluding that the determination of "good cause" for the removal of a library trustee under section 24–90–108(5), C.R.S.2014, of the Colorado Library Law, was a quasi-judicial decision subject to judicial review, and

(2) abused its discretion in finding, under the test articulated in *Rathke v. MacFarlane*, 648 P.2d 648, 653–54 (Colo. 1982), that plaintiffs sufficiently demonstrated their likelihood of success on the merits, to justify the preliminary injunction order.

¶ 3 We conclude as a matter of first impression that determination of "good cause" for the removal of trustees under the Colorado Library Law is subject to judicial review, and we affirm the district court's order preliminarily enjoining the removal of the trustees and placing limitations on the actions they may take on behalf of the district.

I.  Background

¶ 4 The district was established in 1985 pursuant to the Colorado Library Law, sections 24–90–101 to –606, C.R.S.2014. A library district is "a public library established as its own taxing authority by one or more governmental units or parts thereof. A library district shall be a political subdivision of the state." § 24–90–103(6), C.R.S.2014. Acting together, Weld County; the munici-

palities of Ault, Eaton, Hudson, Fort Lupton, Greeley, and Evans; and the RE–8 School District (serving Fort Lupton) (collectively, the establishing entities) established and participated in the district. The district's board consists of seven trustees, serving staggered five-year terms. The district's bylaws provide for nomination of a trustee candidate by a selection committee comprised of one member from each establishing entity who chooses to participate on the committee and two members of the board of trustees. The selection committee then sends the name of its nominee to the establishing entities for ratification, which requires a two-thirds majority of the establishing entities.

¶ 5 In October 2013, a scheduled vacancy arose for a trustee position. The selection committee interviewed candidates and selected a nominee, but the establishing entities failed to ratify the committee's nominee by the required two-thirds majority. Accordingly, the board of trustees reconvened the selection committee to begin the nomination process again.

¶ 6 In the meantime, the commissioners and the other defendants met on April 1, 2014, and planned to remove the district's board. Representatives of the establishing entities met again a week later to nominate replacement trustees. The City of Greeley declined to participate in this meeting. Over the course of the following week, the establishing entities, except for the cities of Evans and Greeley, passed resolutions to remove the entire board, effective immediately, and to substitute commissioner Mike Freeman as well as Tom Holton, Mayor of Fort Lupton; Mike Simone, President of the RE–8 School Board of Education; Scott Moser, Mayor of Eaton; Gary White, Mayor of Ault; and Ray Patch, Mayor of Hudson (collectively, the replacement board), as new members of the board. The resolutions also named Greeley Mayor Tom Norton for the "at large" position, but he did not accept the nomination.

---

2. The other defendants are, in their official capacities, Gary White, Mayor of the Town of Ault; Tom Holton, Mayor of the City of Fort Lupton; Scott Moser, Mayor of the Town of Eaton; Ray Patch, Mayor of the Town of Hudson; and Mike Simone, President of the RE–8 School District Board of Education. They did not join in the commissioners' appeal.

3. The current trustees are Karen Rademacher, Lucille Arnusch, Jacqueline Maslowe, Brian Larson, and Stan Sameshima.

¶ 7 The resolutions contained largely identical language. They stated that the establishing entities sought removal of the entire board because the board had "moved away" from the "original promise" to the establishing entities to allow (1) municipal retention of the title to its library property; (2) continuation of the boards of municipal library trustees to ensure local control; and (3) the sharing of the library-related mill levies through a two-thirds to one-third allocation of the property tax generated from the service area of the municipal libraries.

¶ 8 Plaintiffs filed a complaint seeking a declaratory judgment stating that their removal and the election of the replacement board of trustees was contrary to Colorado law and the district's bylaws. Plaintiffs further sought preliminary and permanent injunctions enjoining their removal and replacement as trustees.

¶ 9 Following an evidentiary hearing in which defendants presented no evidence, the district court granted a preliminary injunction (1) prohibiting the trustees' removal and (2) limiting the trustees' ability to enter into any new contracts, begin new projects, or adopt new policies until the resolution of this action.

## II. Scope of Review

¶ 10 The commissioners argue that the district court erred in allowing evidence regarding the existence of good cause "in fact" under section 24–90–108(5) for the removal of the trustees because the decision to remove the trustees was a ministerial or administrative act of each legislative body and is therefore not subject to judicial review. We disagree.

¶ 11 In construing a statute, we read and consider it as a whole, and interpret it in a manner giving consistent, harmonious, and sensible effect to all of its parts. *Soicher v. State Farm Mut. Auto. Ins. Co.*, 2015 COA 46, ¶ 46, 351 P.3d 559. We do not interpret a statute to render any part of it meaningless or absurd. *Id.* We give effect to every word of a statute, and we do not adopt a construction that renders any term superfluous. *Slack v. Farmers Ins. Exch.*, 5 P.3d 280, 284 (Colo.2000); *see also* § 2–4–201(1)(b), C.R.S.

2014 (in enacting a statute, it is presumed that the *entire* statute is intended to be effective).

¶ 12 As we discuss below, there are preexisting legal standards addressing the nature of good cause, and the supreme court has held that a finding of good cause is subject to judicial review. *See Watso v. Colo. Dep't of Soc. Servs.*, 841 P.2d 299, 311 (Colo.1992); *see also May v. Colo. Civil Rights Comm'n*, 43 P.3d 750, 754 (Colo.App.2002). We acknowledge that in *Trimble v. People*, 19 Colo. 187, 194–95, 34 P. 981, 984 (1893), the supreme court concluded that removal of a government official "at any time for cause ... but not for political reasons" was not subject to judicial review. The statute interpreted in that case, however, differs from section 24–90–108(5), in that its language did not include the modifier "good" before "cause." *See Trimble*, 19 Colo. at 194, 34 P. at 984.

¶ 13 The phrase "good cause" implies that an objective evaluation must take place before the removal of a trustee, to determine if the cause asserted is adequate. *See Watso*, 841 P.2d at 311. Many years after *Trimble* was decided, the supreme court ruled in *Watso* that good cause determinations are subject to judicial review. *Id.* Indeed, to conclude that a finding of "good cause" is not subject to judicial review would render the use of that phrase in the statute meaningless, and thus enable the establishing entities of a library district to remove board trustees for any reason whatsoever, without factual basis. Such a result would be contrary to the obvious legislative intent. Accordingly, *Trimble* does not control our analysis of section 24–90–108(5).

¶ 14 We reject the commissioners' argument that the good cause determination for removal of library trustees is not quasi-judicial action and therefore not susceptible of judicial review.

An action is quasi-judicial when it involves the determination of rights, duties, or obligations so as to adversely affect the protected interests of specific individuals, and it is reached by application of preexisting legal standards or policy considerations to

past or present facts to resolve the particular interests in question. In contrast, a ministerial act is devoid of any meaningful official discretion.

*Hellas Constr., Inc., v. Rio Blanco Cnty.*, 192 P.3d 501, 504 (Colo.App.2008) (citations omitted).

¶ 15 For example, a city's decision to carry out existing legislative policies, in an executive fashion, which is temporary in operation or effect, is administrative or ministerial. *See Prairie Dog Advocates v. City of Lakewood*, 20 P.3d 1203, 1208 (Colo.App. 2000); *see also City of Aurora v. Zwerdlinger*, 194 Colo. 192, 197, 571 P.2d 1074, 1077 (1977) (establishment of a city owned water system was a legislative matter; however, "the receipts and expenses incidental to its maintenance and management [were] executive or administrative matters"). While the existence of a statute or ordinance requiring notice and a hearing is a signal that the governmental decision is quasi-judicial for purposes of judicial review, those factors are not essential to determining whether an action is quasi-judicial. *Widder v. Durango Sch. Dist. No. 9–R*, 85 P.3d 518, 527 (Colo. 2004); *see also Cherry Hills Resort Dev. Co. v. City of Cherry Hills Vill.*, 757 P.2d 622, 627 (Colo.1988).

¶ 16 Review under C.R.C.P. 106(a)(4) is the exclusive remedy for determining whether a governmental body exercising a quasi-judicial function has abused its discretion or exceeded its jurisdiction. *See Quaker Court Ltd. Liab. Co. v. Bd. of Cnty. Comm'rs*, 109 P.3d 1027, 1031 (Colo.App. 2004). However, a plaintiff need not label his action as one under C.R.C.P. 106(a)(4) to secure judicial review. "The question which should concern us is not whether the plaintiff has asked for the proper remedy, but whether he is entitled to any remedy. If the plaintiff is entitled to relief under the allegations of the complaint, the court may grant it regardless of the specific remedy requested." *Tisdel v. Bd. of Cnty. Comm'rs*, 621 P.2d 1357, 1360 (Colo.1980); *see also Widder*, 85 P.3d at 523, 527–28 (the plaintiff's action was subject to the limited review provided under C.R.C.P. 106(a)(4) because he sought review of a quasi-judicial decision, regardless of how he labelled his complaint); *Danielson v. Zoning Bd. of Adjustment*, 807 P.2d 541, 544 (Colo.1990) (a plaintiff cannot escape time limits for a C.R.C.P. 106(a)(4) action by labelling the action as one for declaratory judgment).

¶ 17 Accordingly, although plaintiffs did not refer to C.R.C.P. 106(a)(4) as the basis for relief in their complaint, we are not bound by the label attached to their pleadings. Plaintiffs' complaint would have been timely filed as a C.R.C.P. 106(a)(4) action, and, therefore, we construe it as such. *See* C.R.C.P. 106(b) (a complaint seeking relief under C.R.C.P. 106(a)(4) must be filed in the district court within twenty-eight days after the governmental body's final decision).

¶ 18 We do not consider the absence of a notice or hearing requirement in section 24–90–108(5) to be dispositive of the nature of the action. Here, as the commissioners concede, the rights, duties, and obligations of the trustees as individuals were determined based on the defendants' evaluation of whether there was good cause for the trustees' removal. And that evaluation was based on a legal standard and past or present facts.

¶ 19 The commissioners nonetheless contend that because independent decisions had to be made by each of the legislative bodies of the six establishing entities, it would have been "impossible" to afford a hearing to the trustees they sought to remove. But the commissioners have failed to demonstrate the existence of insurmountable hurdles to giving notice and a hearing. For example, the Weld County Board of County Commissioners or another legislative body could have held a hearing and provided copies of the record (including a transcript, exhibits, and any written submissions) to the other establishing entities. Or the legislative bodies could have jointly arranged for a special master or hearing officer to conduct a hearing and provide the record to all of the establishing entities.

¶ 20 We therefore agree with the district court's conclusion that it can review the existence of good cause for removal under section 24–90–108(5).

¶ 21 However, we also note that the district court addressed the likelihood of success on the issue of good cause, but it has not yet made a final decision on the merits. "The decision to grant or deny a request for a preliminary injunction is not an adjudication of the parties' ultimate rights in a controversy and our review of such a decision does not address these ultimate issues." *Friends of Denver Parks, Inc. v. City & Cnty. of Denver*, 2013 COA 177, ¶ 39, 327 P.3d 311.

¶ 22 Accordingly, we turn next to whether the district court abused its discretion in its analysis under *Rathke*, particularly its determination that plaintiffs demonstrated a reasonable probability of success in proving that the commissioners and the other defendants removed the library trustees without good cause. We conclude the court did not abuse its discretion in granting the preliminary injunction.

### III. Preliminary Injunction

#### A. Standard of Review

¶ 23 A district court's decision to grant or deny a temporary injunction is an appealable order. C.A.R. 1(a)(3).

¶ 24 A district court has discretion to grant or deny a preliminary injunction, and its ruling will not be reversed absent an abuse of that discretion. *Friends of Denver Parks*, ¶ 38; *Westpac Aspen Invs., LLC v. Residences at Little Nell Dev., LLC*, 284 P.3d 131, 138 (Colo.App.2011). The court abuses its discretion when its decision is based on an erroneous application of the law or is otherwise manifestly arbitrary, unreasonable, or unfair. *Friends of Denver Parks*, ¶ 38.

#### B. Law

¶ 25 In exercising its discretion, the district court must apply a six-part test, finding that the party seeking the injunction has demonstrated:

(1) a reasonable probability of success on the merits;

(2) a danger of real, immediate, and irreparable injury which may be prevented by injunctive relief;

(3) that there is no plain, speedy, and adequate remedy at law;

(4) that the granting of a preliminary injunction will not disserve the public interest;

(5) that the balance of equities favors the injunction; and

(6) that the injunction will preserve the status quo pending a trial on the merits.

*Rathke*, 648 P.2d at 653–54. If any of these criteria is not met, the moving party is not entitled to injunctive relief. *Id.* at 654. On appeal, the commissioners have challenged only the first factor—plaintiffs' reasonable probability of success on the merits.[4]

#### C. The Preliminary Injunction Order

¶ 26 In its written order granting plaintiffs' motion for a preliminary injunction, the district court made a number of findings regarding plaintiffs' likelihood of success, including the following:

- Contrary to the commissioners' arguments, the court must be able to review the stated reasons for good cause for the Colorado Library Law's provision regarding removal (section 24–90–108(5)) to be meaningful;

- There was no evidence that the trustees took actions to interfere with the establishing entities' retention of title to library property, and any evidence contradicted that assertion;

- While the trustees tried to persuade Fort Lupton to become a branch library, Fort Lupton continued as a member library;

- The court could not find that the board had generally moved away from the continuation of local boards of library trustees to ensure local control;

---

4. Appellants referred to the six *Rathke* factors in their opening brief, but made no argument with respect to factors (2) through (6). We therefore decline to address those factors. *See Fiscus v.*

*Liberty Mortg. Corp.*, 2014 COA 79, ¶ 35 n.1, —— P.3d —— (cert. granted on other grounds Apr. 6, 2015).

- There was no evidence that there had ever been a discontinuation or limitation of services when there were disagreements between the board and member libraries;
- There was no evidence that the board had taken any action to move away from the two-thirds to one-third statutory allocation of the mill levies;
- No information was presented regarding the actions of any individual trustee that would constitute good cause for removing that trustee;
- The parties do not dispute that the new resolutions purporting to appoint the replacement board do not comply with the current bylaws;[5]
- The replacement board would represent a mere fourteen percent of the patrons of the district; and
- The court could not find facts supporting the stated reasons for good cause.

### D. The Colorado Library Law

¶ 27 "A library trustee may be removed only by a majority vote of the appointing legislative body or bodies, but only upon a showing of good cause as defined in, but not limited to, the bylaws adopted by the board." § 24–90–108(5). The board's bylaws are required to include "provisions for the definition of good cause to be applied in the removal of a trustee." § 24–90–109(1)(a), C.R.S. 2014. The bylaws also state that "[a] Trustee may be removed only by a majority vote of the appointing legislative body or bodies, but only upon a showing of good cause." The bylaws did not at the time of the resolutions, however, include any definition of good cause.

### E. Good Cause

¶ 28 While sections 24–90–108(5) and 24–90–109(1)(a) require that the board's bylaws define good cause, section 24–90–108(5) provides that the definition of good cause to be applied in determining the validity of the removal of a trustee is not limited to the

bylaws' definition. Because the bylaws here do not contain such a definition, we turn to Colorado case law to guide us.

¶ 29 Good cause is "substantial or legal justification, as opposed to an assumed or imaginary pretense," and it requires objective evaluation based on the factual context. *Watso*, 841 P.2d at 311; *see also Wallbank v. Rothenberg*, 140 P.3d 177, 180 (Colo. App.2006). We uphold factual determinations of good cause when they are supported by substantial evidence in the record. *May*, 43 P.3d at 754. When reviewing good cause under other statutes, a division of this court has held that where a statute does not specify factors for the district court to consider in determining good cause, the court may exercise its discretion to consider factors it deems relevant. *Wallbank*, 140 P.3d at 180–81.

¶ 30 In this case, the district court considered defendants' stated reasons for removal of the current trustees, and declined at this preliminary stage to "second guess" whether those stated reasons would constitute good cause. Rather, the district court examined whether the stated reasons were valid and supported by evidence and whether they were applied to each individual trustee. We agree with the district court that defendants did not provide evidence of any facts supporting their stated reasons for good cause. As the commissioners concede, defendants did not present any record supporting the resolutions adopted by the legislative bodies of the five establishing entities that voted to remove the trustees. Accordingly, we conclude that the district court did not erroneously apply the law or otherwise make a decision that was manifestly arbitrary, unreasonable, or unfair, when it granted plaintiffs' motion for a preliminary injunction in this matter.

### IV. Conclusion

¶ 31 The order is affirmed.

---

5. We recognize that defendants challenge the legality of certain provisions of the bylaws, an

issue that is not currently before us.

JUDGE PLANK * and JUDGE MÁRQUEZ concur.